FILED

2018 AUG -2 AM 11: 39

BARBARA A. WIEDENBEIN
CLERK OF COMMON PLEAS COURT
CLERMONT COUNTY, OH



IN THE COURT OF COMMON PLEAS OF CLERMONT COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC<br>4289 Ivy Pointe Blvd.<br>Cincinnati, Ohio 45245 | : | Case No. |
| | : | Judge  2018 CVH 01149  JUDGE BROCK |
| Plaintiff, | : | **JUDGE BROCK** |
| v. | : | **VERIFIED COMPLAINT FOR** |
| | : | **TEMPORARY RESTRAINING** |
| SHELBY HYDE<br>150 W. 9th Ave.<br>Denver, Colorado 80204 | : | **ORDER, PRELIMINARY AND**<br>**PERMANENT INJUNCTIVE**<br>**RELIEF, AND DAMAGES** |
| and | : | |
| LOGISTIC DYNAMICS, INC.<br>155 Pineview Drive<br>Amherst, New York 14228 | : | |
| Defendants. | : | |

Plaintiff Total Quality Logistics, LLC ("TQL"), for its Verified Complaint against Defendants Shelby Hyde ("Hyde") and Logistic Dynamics, Inc. ("LDI"), alleges as follows:

## INTRODUCTION

1. This case arises from the breach of certain non-competition, non-solicitation, and non-disclosure covenants owed to TQL by one of its former employees, Hyde.

2. TQL provides freight brokerage and third-party logistics services to customers across the United States. Hyde was previously employed by TQL in multiple

1

23285804.1

Ex. A page 1

positions, including as a Logistics Account Executive Trainee and a Logistics Account Executive. Prior to beginning her employment with TQL, Hyde executed an Employee Non-Compete, Confidentiality and Non-Solicitation Agreement, in which she agreed, among other things, not to compete with TQL or to solicit TQL's customers during her employment and for a period of one year after her termination, regardless of whether her termination was voluntary or involuntary. Where, as here, Hyde breaches the Agreement prior to the expiration of this one-year period, that one-year period will be tolled until Hyde is in full compliance with her obligations under the Agreement.

## PARTIES, JURISDICTION, AND VENUE

3. TQL is an Ohio limited liability company with its principal place of business in Clermont County, at 4289 Ivy Pointe Blvd., Cincinnati, Ohio 45245.

4. Hyde is a former employee of TQL and resides at 150 W. 9th Ave., Denver, Colorado 80204.

5. LDI is a corporation organized and existing under the laws of the State of New York, with its principal place of business located in Amherst, New York.

6. This Court has jurisdiction over the parties and this matter because Hyde has contractually consented to this Court's jurisdiction and LDI's and Hyde's actions have knowingly caused harm to TQL in Ohio.

7. Venue is proper in this Court pursuant to Rule 3(B) of the Ohio Rules of Civil Procedure and because Hyde contractually consented to this Court's jurisdiction.

## FACTUAL BACKGROUND

8. TQL is the second largest firm in the highly competitive freight brokerage industry and provides freight brokerage services, third-party logistics services, truck

2

brokerage services, and assistance with supply-chain management throughout the United States.

9. LDI is a direct competitor of TQL. Like TQL, LDI provides freight brokerage services across the United States.

10. The third-party logistics industry and the freight-shipping industry in general, is extremely competitive. Relationships with customers, carriers, and other brokers are critical to success within the industry. TQL spends significant amounts of time, money, and other resources to develop relationships with new customers and strengthen relationships with existing customers. TQL has also made substantial investments in developing and protecting the secrecy of its proprietary systems, processes, and procedures it uses to manage its operations and to compete in the competitive logistics and freight industry.

11. TQL takes significant measures to protect its trade secrets, customer relationships, and other confidential information. For example, before they begin employment at TQL, all Logistics Account Executive Trainees, as well as many other types of employees, must sign restrictive covenants, the same as or similar to Hyde's restrictive covenant, that restrict their ability to compete with TQL, to solicit TQL's customers or employees, or to disclose or misuse TQL's confidential information.

12. TQL also utilizes individualized passwords for electronic access to its proprietary and confidential information, internal system controls to prevent employees from downloading and printing certain information, and keycards and badges for entry to its offices.

3

23285804.1

Ex. A page 3

13. From September 12, 2012 through September 14, 2017, TQL employed Hyde in its offices located in Cincinnati, Ohio, Detroit, Michigan, and Denver, Colorado.

14. TQL initially hired Hyde in its Cincinnati, Ohio office as a Logistics Account Executive Trainee.

15. After hiring Hyde, TQL provided her with extensive training on TQL's strategies and methods to succeed within the industry, including, without limitation, training on TQL's services, customers, pricing structure, sales strategies, and general operations. TQL's training program takes between 8 and 26 weeks to complete.

16. On March 18, 2013, after completing TQL's comprehensive training program, Hyde became a Logistics Account Executive in TQL's Cincinnati office.

17. On September 9, 2013, Hyde also became a Saturday Group Leader ("SGL") in TQL's Cincinnati office.

18. Hyde relocated to TQL's Detroit, Michigan office on February 17, 2014. On November 9, 2015, she became a Senior Logistics Account Executive in TQL's Detroit office.

19. Hyde relocated to TQL's Denver, Colorado office on September 12, 2016. On April 3, 2017, she became a Sales Team Lead ("STL") Mentor in TQL's Denver office.

20. Throughout her employment by TQL, Hyde acquired detailed knowledge of TQL's unique operations, including, without limitation, shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services. She also had extensive access to TQL's confidential and highly proprietary information, for use in the performance of her job duties, including, without limitation, its proprietary software, operating policies and procedures, financial records

(such as credit history and other similar information about current and prospective customers, suppliers, and motor carriers), information about pricing and the manner and mode of doing business, the terms of TQL's business dealings and relationships with customers and motor carriers, contracts and agreements of all kinds, sales lists and strategies, and detailed customer and motor carrier lists and information.

21. As part of her employment, Hyde was also required to manage relationships with TQL's existing customers and to develop relationships with prospective customers. Hyde had regular contact with TQL's existing and prospective customers and, in fact, served as the main point of contact from TQL for many of those customers.

22. In consideration of her employment with TQL, Hyde voluntarily executed an Employee Non-Compete, Confidentiality and Non-Solicitation Agreement (the "Agreement"), a copy of which is attached as **Exhibit A**.

23. Pursuant to the express terms of the Agreement, Hyde acknowledged that TQL has trade secrets and develops and maintains the above-referenced confidential and highly proprietary information. She further acknowledged that she would have access to TQL's trade secrets and confidential information and that the unauthorized use of such information would cause substantial and irreparable harm to TQL.

24. By signing the Agreement, Hyde also agreed to, among others, the following terms:

    a. To maintain the secrecy of TQL's confidential information;

    b. To use TQL's confidential information only for the benefit of TQL, and only as properly necessary and authorized by TQL;

      c.      To immediately return all confidential information to TQL upon termination of employment or upon request by TQL;

      d.      Not to directly or indirectly maintain employment by or engage in any Competing Business, defined as any person or company "engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services anywhere in the Continental United States" for a period of one (1) year following termination or cessation of employment with TQL; and

      e.      Not to directly or indirectly solicit customers or divert business from TQL for a period of one (1) year following termination or cessation of employment with TQL.

Agreement, ¶¶ 6-9, 9(b)(i)-(iv), 9(f).

25.    Hyde also agreed that the Agreement's "geographic, duration, and content restrictions are reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition." Agreement, ¶ 9(d).

26.    Further, the Agreement expressly provides that TQL is entitled to injunctive relief upon a breach or threatened breach of any part of the Agreement and that Hyde shall be liable for costs, expenses, and attorneys' fees incurred by TQL upon a finding that she violated the Agreement. Agreement, ¶ 9(e).

27.    In exchange for Hyde's agreement to these restrictions on her post-employment conduct, Hyde received from TQL, adequate and sufficient consideration, including, without limitation, continued employment, extensive training, and continued

6

23285804.1

access to TQL's proprietary and confidential information, to assist with her professional development.

28. Hyde's employment with TQL terminated on September 14, 2017. Her non-competition and non-solicitation obligations under the Agreement therefore were not set to expire until September 14, 2018.

29. Despite those non-competition and non-solicitation obligations, however, Hyde has been engaging in work for a Competing Business in violation of the Agreement.

30. In particular, Hyde has been providing brokerage services on behalf of Logistics Dynamics, Inc. ("LDI"). She has been providing those freight brokerage services in conjunction with another former TQL employee who works for LDI.

31. In providing brokerage services for LDI, Hyde has taken on roles that are extremely similar to, if not the same as, her roles with TQL.

32. In Hyde's role brokering for LDI, she will inevitably reveal, base judgments and decisions upon, or otherwise use and disclose TQL's trade secrets or confidential information, solicit TQL's customers, and otherwise compete with TQL in violation of the Agreement. In fact, Hyde is known to have contacted and/or brokered freight after her separation from TQL for at least one customer that she previously serviced for TQL.

33. Due to Hyde's violations of the Agreement, Hyde's one-year non-competition and non-solicitation obligations have been tolled under the Agreement since the date that Hyde began working for and/or on behalf of LDI.

34. At the time Hyde began working for LDI, LDI knew that TQL requires its freight brokers, and many other employees, to sign the Non-Compete Agreement.

35. Not only had LDI previously hired at least five other former TQL employees in violation of the their Non-Compete Agreements with TQL and at least one other former TQL employee, but its recruiters also had expressly admitted to current and former TQL employees that LDI was aware of, but was nonetheless intentionally inducing violations of, TQL's Non-Compete Agreement.

36. Specifically, in or around June 2017, TQL learned that several LDI recruiters were soliciting current and former TQL employees to provide freight brokerage services for LDI.

37. The LDI recruiters represented to the TQL employees that LDI was recruiting and/or had recruited other current and former TQL employees who were ignoring their Non-Compete Agreements with TQL.

38. Upon learning of LDI's recruiting tactics, TQL sent an email to an LDI recruiter dated June 6, 2017. In that email, TQL informed LDI that it was aware of LDI's improper solicitation of TQL employees as well as its improper statements regarding TQL's Non-Compete Agreements. TQL also informed LDI that TQL would vigorously defend its Non-Compete Agreements and that LDI's statements and continued hiring of TQL employees would result in litigation.

39. Notwithstanding this knowledge of TQL's Non-Compete Agreement, LDI subsequently hired Hyde to broker freight in direct competition with TQL almost immediately following her separation from TQL in September 2017.

40. Due to Hyde's one-year non-competition and non-solicitation obligations under her Agreement, TQL has made multiple requests to LDI to confirm and discuss the status of Hyde's employment with LDI.

41. TQL's requests have elicited only one evasive response from LDI. TQL's follow-up requests for clarification have been met with complete silence from LDI.

## **FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**
**(Against Hyde)**

42. TQL incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

43. The Agreement is a valid and legally enforceable contract that TQL and Hyde entered into freely and without duress.

44. The Agreement is reasonable in scope, and it is reasonably tailored to protect TQL's legitimate business interests.

45. Hyde expressly agreed that the Agreement's "geographic, duration, and content restrictions are reasonable and properly required for the adequate protection of the business of TQL from the disclosure of Confidential Information and unfair competition." Agreement, ¶ 9(d).

46. Hyde has willfully breached the Agreement by providing services for a Competing Business prior to the expiration of her one-year non-competition and non-solicitation obligations under the Agreement.

47. Hyde has willfully breached the Agreement by wrongfully using or disclosing TQL's confidential information without TQL's authorization.

48. As a direct and proximate result of Hyde's actual or threatened unlawful conduct, TQL has and will continue to suffer immediate, substantial, and irreparable harm, including, but not limited to:

      a.    Use and disclosure by Hyde of TQL's valuable confidential and proprietary information, which is solely the property of TQL;

      b.    The loss of confidence and trust of customers, lowering of goodwill, and loss of business reputation; and

      c.    Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

49.    Monetary damages alone will not be sufficient to remedy all of the harm caused to TQL by Hyde's breaches of the Agreement.

50.    A temporary restraining order, preliminary injunction, and permanent injunction are necessary to enjoin Hyde from further violations of the provisions of the Agreement and prevent irreparable harm to TQL.

## SECOND CLAIM FOR RELIEF
## (Misappropriation of Trade Secrets)
## (Against Hyde and LDI)

51.    TQL incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

52.    TQL has trade secrets and develops and maintains confidential and highly proprietary information, including, without limitation, its proprietary software, operating policies and procedures, financial records (such as credit history and other similar information about current and prospective customers, suppliers, and motor carriers), information about pricing and the manner and mode of doing business, the terms of TQL's business dealings and relationships with customers and motor carriers, contracts and agreements of all kinds, sales lists and strategies, and detailed customer and motor carrier lists and information.

53. TQL's confidential information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, including TQL's competitors; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

54. TQL's confidential information is protected, in whole or in part, as a trade secret within the meaning of Ohio Rev. Code § 1333.61(D).

55. While employed by TQL, Hyde had extensive access to and knowledge of TQL's confidential information. She also used TQL's confidential information in the performance of her job responsibilities at TQL.

56. Upon information and belief, Hyde and LDI have misappropriated or threatened to misappropriate TQL's trade secrets for use against TQL and for the benefit of Defendants within the meaning of Ohio Rev. Code § 1333.61(B)(2). As a direct and proximate result of Defendants' actual or threatened misappropriation of TQL's trade secrets, TQL has and will continue to suffer the above-referenced immediate, substantial, and irreparable harm.

57. TQL has no adequate remedy at law.

58. Monetary damages alone will not be sufficient to remedy all of the harm caused to TQL by Defendants' actual or threatened misappropriation of trade secrets.

59. A temporary restraining order, preliminary injunction, and permanent injunction are necessary to prevent Hyde's and LDI's further violations of the provisions of the Agreement and to prevent irreparable harm to TQL.

11

## **THIRD CLAIM FOR RELIEF**
## **(Tortious Interference with a Contractual Relationship)**
## **(Against LDI)**

60. TQL incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

61. The Agreement is a valid and binding agreement between TQL and Hyde.

62. At all relevant times, LDI has been aware of the Non-Compete Agreements between TQL and its current and former employees, including the Agreement between TQL and Hyde.

63. Despite this knowledge, LDI has purposefully and intentionally interfered with the contractual relationship between TQL and Hyde by contacting, soliciting, hiring, employing, or otherwise retaining Hyde to broker freight for LDI in direct competition with TQL in violation of Hyde's Agreement.

64. LDI has tortiously, willfully, and maliciously, ignored the contractual obligations that Hyde owes to TQL, without any justifiable excuse, and in bad faith.

65. LDI has taken no affirmative steps to terminate Hyde, despite TQL having provided LDI notice of Hyde's Agreement and violations.

As a direct and proximate result of LDI's tortious interference with the Hyde Agreement, TQL has been damaged by, among other things, the loss of sales revenue, customer relationships, and fair competition in an amount in excess of $25,000 but less than $75,000 to be proven at trial.

**WHEREFORE**, Plaintiff TQL respectfully requests that this Court issue a temporary restraining order, preliminary injunction, and permanent injunction, against Hyde:

    A.    Enforcing Hyde's obligations under her Agreement with TQL;

    B.    Restraining and enjoining Hyde from continuing her employment and/or business relationship with LDI or competing with TQL in any other manner for the balance of the period dictated by the Agreement;

    C.    Restraining and enjoining Hyde from engaging in any further acts in violation of the Agreement, including soliciting customers or diverting business from TQL for the balance of the period dictated by the Agreement;

    D.    Restraining and enjoining Hyde from directly or indirectly accessing, using, disclosing, communicating, or otherwise using TQL's trade secrets or confidential information, including but not limited to information related to any customer;

    E.    Directing Hyde to return to TQL any confidential information or trade secrets of TQL that she possesses; and

    F.    Granting such other and further relief as the Court deems appropriate.

**FURTHERMORE**, TQL respectfully requests that this Court issue judgment in its favor and against Hyde and LDI as follows:

    A.    A Judgment in TQL's favor that:

        1. Hyde breached her Agreement with TQL;

        2. Hyde and LDI misappropriated TQL's trade secrets; and

23285804.1

      3. LDI tortiously interfered with the Hyde Agreement.

   B. Award TQL compensatory and punitive damages, costs, expenses, and attorney fees in an amount in excess of $25,000 but less than $75,000, to be determined at trial, together with pre-judgment and post-judgment interest; and

   C. Award TQL such other and further relief as this Court finds just and proper.

                                   Respectfully submitted,

                                   Timothy G. Pepper (0071076)
                                   Valerie M. Talkers (0088769)
                                   TAFT STETTINIUS & HOLLISTER LLP
                                   40 North Main Street, Suite 1700
                                   Dayton, Ohio 45423
                                   Tel: (937) 228-2838
                                   Fax: (937) 228-2816
                                   pepper@taftlaw.com
                                   vtalkers@taftlaw.com

                                   Attorneys for Plaintiff
                                   Total Quality Logistics, LLC

## **VERIFICATION OF COMPLAINT**

STATE OF OHIO )
) ss:
COUNTY OF CLERMONT )

I, *Marc Bostwick*, having first been duly sworn, depose and state that I have read the foregoing Verified Complaint and verify that the facts stated therein as they relate to this dispute are true and accurate, based on my knowledge, information, and belief.

TOTAL QUALITY LOGISTICS, LLC.

By: *[signature]*

Marc Bostwick, Risk Manager

SWORN TO BEFORE ME and subscribed in my presence this 1st day of August, 2018.

*[signature]*
NOTARY PUBLIC

My Commission Expires: 7/22/2023

15

23285804.1

Ex. A page 15